IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tanya Dee Watford, | ) | C/A No.: 1:13-2410-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

    A.    Procedural History

On December 16, 2010, Plaintiff filed an application for DIB in which she alleged her disability began on July 15, 2008. Tr. at 140–41. Her application was denied initially and upon reconsideration. Tr. at 61–62, 67. On November 1, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Nicole S. Forbes-Schmitt. Tr. at 35–56 (Hr'g

Tr.). The ALJ issued an unfavorable decision on November 21, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 17–29. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on September 5, 2013. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 61 years old at the time of the hearing. Tr. at 39. She completed high school and one year of college. *Id.* Her past relevant work ("PRW") was as a secretary, a bookkeeper, and an accounts payable and receivable clerk. Tr. at 53. She alleges she has been unable to work since July 15, 2008. Tr. at 57.

2.    Medical History

Plaintiff has a history of right hip replacement in 2004 and left hip replacement in 2006. Tr. at 368.

On November 21, 2007, an MRI of Plaintiff's left shoulder indicated partial rotator cuff tendon tear/tendinosis; moderate hypertrophy of the acromioclavicular joint with significant indentation along the distal supraspinatus; superior ridge of the humeral head in the glenoid fossa with a very prominent one centimeter area of decreased signal; and degenerated labral cartilage. Tr. at 257.

Plaintiff presented to Timothy M. Hunter, M.D., on March 27, 2008, for chronic pain and depression, which were indicated to be stable. Tr. at 252. Dr. Hunter prescribed Lorcet as needed and Effexor XR 75 mg. *Id.*

Plaintiff presented to Melton R. Stuckey, M.D., on October 31, 2008, for medication refills. Tr. at 442. Dr. Stuckey noted that Plaintiff had osteoarthritis, but indicated that she "seems to get around pretty good." *Id.* He observed no abnormalities during his physical examination. *Id.* He indicated that Plaintiff took Aleve, but prescribed Vicodin for more severe pain. *Id.*

Plaintiff followed up with Dr. Stuckey for medication refills on February 26, 2009. Tr. at 449. Plaintiff complained of pain in her back and knees, but Dr. Stuckey noted that she "gets around fairly well." *Id.*

On May 28, 2009, Plaintiff presented to Dr. Stuckey for medication refills. Tr. at 448. Dr. Stuckey noted some changes of arthritis, but also indicated that Plaintiff "gets around pretty good." *Id.*

Plaintiff followed up with Dr. Stuckey on October 9, 2009, and reported that she was having problems with arthritis and hypertension. Tr. at 447. Physical examination was normal. *Id.* Dr. Stuckey indicated that Plaintiff took arthritis medication, but that she had to supplement with Vicodin for more severe pain. *Id.*

On October 12, 2009, Dr. Hunter indicated that Plaintiff had been taken off Effexor and prescribed Lexapro. Tr. at 249. Dr. Hunter also continued her prescriptions for Mobic and Lorcet. *Id.*

On February 15, 2010, Plaintiff presented to the emergency department at Waccamaw Community Hospital complaining of back pain after increased physical activity over the previous weekend. Tr. at 262. Plaintiff indicated that she was essentially asymptomatic unless she was moving and that she had pain with bending over and rotational movements. *Id.* An x-ray of Plaintiff's lumbar spine indicated lumbar spondylosis and a history of bilateral hip replacements. Tr. at 274.

Plaintiff presented to Smith Medical Clinic on February 17, 2010, complaining of arthritis and low back pain, left greater than right. Tr. at 365. Plaintiff's blood pressure was high and she was prescribed Amlodipine. *Id.* Lexapro was discontinued and Plaintiff was prescribed Citalopram for depression. *Id.*

Plaintiff received a lumbar epidural steroid injection at L4-5 on February 25, 2010. Tr. at 364.

On May 17, 2010, Dr. Stuckey indicated that Plaintiff complained of arthritis pain and low back pain. Tr. at 446. Dr. Stuckey noted that Plaintiff was unable to do vigorous things like vacuuming, but that she could do light work in the yard. *Id.* He noted changes of arthritis. *Id.*

Plaintiff followed up with Dr. Stuckey on September 10, 2010, for medication refills. Tr. at 445. Plaintiff complained of back pain and large joint pain, which she stated were worse in the mornings. *Id.*

On January 7, 2011, Plaintiff complained of joint pain to Dr. Stuckey. Tr. at 444. Dr. Stuckey noted no abnormalities during the physical examination, but prescribed Vicodin for pain, as needed. *Id.*

On January 18, 2011, C.A. Moore, PA-C, a physician's assistant at Smith Clinic, completed a mental status form in which she indicated that Plaintiff had no work-related limitation in function due to a mental condition. Tr. at 381.

On February 3, 2011, state agency consultant Lisa Clausen, Ph.D., completed a psychiatric review technique in which she indicated that Plaintiff's psychiatric impairments were not severe and that Plaintiff had only mild difficulties in maintaining social functioning. Tr. at 404, 414.

An x-ray of Plaintiff's lumbar spine on February 11, 2011, indicated spondylosis most pronounced at L1-2 and L4-5. Tr. at 418. An x-ray of Plaintiff's left shoulder was normal. Tr. at 419. An x-ray of her left hip indicated noncemented left hip arthroplasty in good alignment and degenerative changes of the left SI joint. Tr. at 420.

On March 17, 2011, Plaintiff underwent a comprehensive orthopedic examination by Regina A. Roman, D.O. Tr. at 424–29. Dr. Roman noted that Plaintiff ambulated slowly with a straight cane. Tr. at 427. Range of motion of Plaintiff's lumbar spine was decreased and Plaintiff complained of low back pain with all motions. *Id.* Plaintiff had full range of motion of her neck, bilateral shoulders, elbows, wrists, and ankles. Tr. at 427–28. Her bilateral knee flexion was slightly reduced at 120 degrees. Tr. at 428. Plaintiff had reduced flexion and external rotation in her bilateral hips, and she was unable to attempt extension. *Id.* Plaintiff demonstrated negative straight leg raise bilaterally in the seated position, but she was unable to lie supine because of back and hip pain. *Id.* Plaintiff's grip strength and manipulative abilities were normal. *Id.* Plaintiff's

muscle strength was normal in her upper extremities and slightly reduced at 4+/5 in her lower extremities. *Id.* She had no muscle atrophy. *Id.*

On March 22, 2011, William Cain, M.D., completed a physical residual functional capacity assessment in which he indicated that Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for three hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited; no more than frequently balance; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; no more than frequently lift overhead with the left upper extremity; and avoid all exposure to hazards. Tr. at 430–37.

Plaintiff followed up with Dr. Hunter on April 7, 2011, complaining of elevated blood pressure and back pain. Tr. at 438. Dr. Hunter observed normal motor strength, no edema, and normal gait. Tr. at 440. However, he noted that Plaintiff had "lots of pain with decreased ROM" and continued to prescribe Meloxicam and Lorcet. *Id.*

On May 5, 2011, Plaintiff followed up with Dr. Stuckey for medication refills. Tr. at 443. Dr. Stuckey noted that Plaintiff was "quite stressed taking care of her elderly mother," but that she "says she can hardly go many days, so she is going to apply for Disability." *Id.* Dr. Stuckey indicated that Plaintiff had osteoarthritis in her hips, knees, and large joints, but seemed to "get around fairly well." *Id.*

A CT scan of Plaintiff's abdomen and pelvis on July 29, 2011, indicated mild scoliosis with degenerative changes in the lumbar spine. Tr. at 479.

State agency consultant Michael Neboschick, Ph.D., completed a psychiatric review technique on July 15, 2011, in which he indicated that Plaintiff's psychiatric impairments were not severe and that Plaintiff had only mild difficulties in maintaining social functioning. Tr. at 464, 474.

On August 22, 2011, state agency medical consultant Mary Lang, M.D., completed a physical residual functional capacity assessment in which she indicated that Plaintiff was limited as follows: occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; push and/or pull limited to occasional with the bilateral lower extremities; frequently balancing; occasionally climbing ramps/stairs, stooping, and kneeling; never climbing ladders/ropes/scaffolds, crouching, and crawling; reaching with the left upper extremity limited to frequent; and avoid even moderate exposure to hazards. Tr. at 480–87.

Plaintiff followed up with Dr. Stuckey on September 16, 2011, for medication refills. Tr. at 505. Dr. Stuckey noted no abnormalities on examination. *Id.* He prescribed Vicodin for pain. *Id.*

On December 16, 2011, Plaintiff complained to Dr. Stuckey that her back pain was getting worse. Tr. at 504. She reported numbness in her right leg and difficulty sleeping. *Id.* Dr. Stuckey observed no abnormalities. *Id.* He prescribed Lortab for pain and Flexeril to help Plaintiff rest better at night. *Id.*

Plaintiff followed up with Dr. Hunter for medication refills on April 6, 2012. Tr. at 527–29. Plaintiff reported lower back pain. Tr. at 527. Dr. Hunter noted limited lumbar extension, limited lumbar flexion, and bilateral paravertebral tenderness in Plaintiff's lumbar spine. Tr. at 528. He indicated that Plaintiff should avoid heavy or repetitive lifting. Tr. at 529.

    C.      The Administrative Proceedings

        1.      The Administrative Hearing

            a.      Plaintiff's Testimony

At the hearing on November 1, 2012, Plaintiff testified she experienced back pain and numbness and pain in her right leg that went down to her knee. Tr. at 41. She testified she had cluster headaches, but that there was no effective treatment for them. *Id.*

Plaintiff reported a history of hip replacement and that she continued to have some problems with mobility. Tr. at 42. She indicated she lost balance and teetered frequently, but that she could typically walk without problems on even surfaces. Tr. at 43–44. Plaintiff testified she had some difficulty climbing stairs. Tr. at 44–45.

Plaintiff testified she experienced daily back pain that was exacerbated by lifting heavy objects, climbing, and sitting or standing for too long. Tr. at 45. Plaintiff stated she could stand and walk for 10 to 15 minutes at a time and could sit for 20 to 25 minutes. Tr. at 45–46. She indicated that she could lift 10 to 15 pounds. Tr. at 47. Plaintiff stated she would be unable to perform a job that required sitting for most of the day because of her need to alternate positions, headaches, and back pain. Tr. at 42.

Plaintiff testified she experienced some anxiety. Tr. at 48. She indicated her medications caused no side effects. Tr. at 49.

Plaintiff testified she did some light dusting and washed a few dishes, but she was unable to perform any vacuuming, mopping, or sweeping. *Id.* Plaintiff testified that she would pick up a few things from stores, but that she did not do major shopping. *Id.* She stated she attended church services on Sunday mornings, but that she got up and walked around during the services. Tr. at 50. She testified she drove approximately twice a week. *Id.*

Plaintiff testified she was no longer taking care of her mother, but that she had previously helped her mother with her meals. Tr. at 42. She indicated she continued to smoke half of a pack of cigarettes daily. Tr. at 43. Plaintiff testified that she collected unemployment in and before 2010 and that she was applying for jobs at that time. Tr. at 51.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Arthur F. Schmitt reviewed the record and testified at the hearing. Tr. at 52–55. The VE categorized Plaintiff's PRW as a secretary as sedentary with a Specific Vocational Preparation ("SVP") of 6 per the *Dictionary of Occupational Titles* ("*DOT*"), but light as performed; as a bookkeeper as sedentary with a SVP of 6 per the *DOT*, but light as performed; and as an accounts payable and receivable clerk as sedentary with a SVP of 5 per the *DOT*, but light as performed. Tr. at 53. The ALJ described a hypothetical individual of Plaintiff's vocational profile who was limited to sedentary work with only occasional use of the bilateral lower extremities for foot

controls and who should avoid workplace hazards. Tr. at 54. The VE testified that the hypothetical individual could perform Plaintiff's PRW as normally performed. *Id.*

Plaintiff's attorney added further limitations to the ALJ's hypothetical to include a need to get up every 30 minutes to stand for 15 minutes before sitting again, a need to avoid reaching with the bilateral upper extremities more than occasionally; an inability to use the bilateral upper extremities for pushing or pulling; and a need to avoid bending, kneeling, and stooping on more than an occasional basis. *Id.* The VE indicated that the individual would be unable to perform Plaintiff's PRW because her PRW did not include a sit-stand option. Tr. at 54–55. Plaintiff's attorney indicated a further restriction of missing work three or more days per month. Tr. at 55. The VE indicated that restriction would eliminate all jobs. *Id.*

### 2.     The ALJ's Findings

In her decision dated November 21, 2012, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
2.  The claimant has not engaged in substantial gainful activity since July 15, 2008, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).
3.  The claimant has the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the bilateral hips (20 C.F.R. § 404.1520(c)).
4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). She is

limited to occasional use of foot controls and she must avoid exposure to hazards such as unprotected heights or dangerous, moving machinery.

6. The claimant is capable of performing past relevant work as a secretary, bookkeeper, and accounts receivable/payable clerk. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2008, through the date of this decision (20 C.F.R. § 404.1520(f)).

Tr. at 22–29.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ failed to follow the treating physician rule;

2)    The ALJ failed to properly evaluate Plaintiff's credibility; and

3)    The Appeals Council failed to remand the case based on new and material evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.    Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

11

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Treating Physicians' Opinions

Plaintiff argues that the ALJ failed to properly evaluate the opinions of her treating physicians, Drs. Hunter and Stuckey based on the criteria set forth in 20 C.F.R. § 404.1527(c) and SSR 96-2p. [ECF No. 8 at 13–14]. Plaintiff argues that instead of discounting Dr. Hunter's opinion based on the illegibility of his records, the ALJ should

14

have requested clarification from Dr. Hunter. [ECF No. 8 at 14]. Plaintiff further argues the ALJ failed to specify the objective evidence in the record that she found to be inconsistent with the impairments described by Dr. Hunter. [ECF No. 8 at 15]. Plaintiff also argues that the ALJ gave undue weight to the opinions of the state agency medical consultants. [ECF No. 8 at 15–16].

The Commissioner argues that the ALJ properly evaluated the medical opinions in the record. [ECF No. 11 at 4]. The Commissioner contends that the ALJ reasonably found that the opinions of Plaintiff's physicians were neither supported by, nor consistent with, the record. [ECF No. 11 at 6]. The Commissioner argues that the ALJ did not indicate that Dr. Hunter's records were discounted because of illegibility. *Id.* The Commissioner also argues that the ALJ relied on inconsistencies in the treatment notes from Drs. Hunter and Stuckey and objective findings in the report from Plaintiff's consultative examination with Dr. Roman to provide a basis for her reliance on the opinions of the state agency medical consultants' opinions. [ECF No. 11 at 10].

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be

accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001).

Pursuant to 20 C.F.R. § 404.1527(c), if a treating source's opinion is not accorded controlling weight, the ALJ should consider "all of the following factors" in order to determine the weight to be accorded to the medical opinion: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination, nature and extent of treatment relationship, and supportability; consistency with the record as a whole, specialization of the medical source; and other factors. *See also Johnson*, 434 F.3d at 654.

The ALJ's decision must explain the weight accorded to all opinion evidence. 20 C.F.R. §§ 404.1527(e)(2)(ii). In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must include the following:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.

SSR 96-2p.

In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make

credibility determinations, or substitute [its] judgment for that of the [Commissioner]."
*Craig*, 76 F.3d at 589.

In view of the foregoing authorities, the court considers the ALJ's treatment of the opinions of Drs. Hunter and Stuckey.

a.     Dr. Hunter's Opinion

On July 9, 2011, Dr. Hunter completed a questionnaire in which he indicated that Plaintiff was limited as follows: sit one to two hours in an eight-hour day; stand/walk one hour or less during an eight-hour day; unable to sit continuously; must get up and move around every 15 to 30 minutes; unable to stand/walk continuously; occasionally lift or carry zero to five pounds; never lift or carry over five pounds; minimal grasping, turning, and twisting objects; minimal use of fingers/hands for fine manipulations; moderate use of arms for reaching; unable to keep neck in a constant position; experience of pain, fatigue, or other symptoms constantly severe enough to interfere with attention and concentration; requires breaks for 15 to 30 minutes each hour; likely to be absent from work more than three times a month because of impairments or treatment; and needs to avoid heights, pushing, pulling, kneeling, bending, and stooping. Tr. at 463.

On December 1, 2011, Dr. Hunter completed a headaches impairment questionnaire. Tr. at 489–94. He indicated that Plaintiff had headaches, which were severe and were associated with vertigo, nausea/vomiting, malaise, photosensitivity, visual disturbances, mood changes, and mental confusion/inability to concentrate. Tr. at 489–90. Dr. Hunter indicated that Plaintiff's headaches occurred weekly and lasted for two days at a time. Tr. at 490. He indicated that Plaintiff's experience of pain or other

17

symptoms was constantly severe enough to interfere with attention and concentration. Tr. at 492. Dr. Hunter indicated that Plaintiff was incapable of even "low stress" in a work environment. Tr. at 493. He further indicated that Plaintiff had psychological limitations; needed to avoid noise, fumes, gases, and temperature extremes; and was unable to push, pull, kneel, bend, or stoop. *Id.*

The ALJ gave little weight to Dr. Hunter's opinions. Tr. at 28. She noted that Dr. Hunter's July 2011 opinion that Plaintiff was disabled from performing even sedentary work because of low back pain and bilateral hip replacements was neither supported by nor consistent with his treatment notes or the objective medical evidence in the record. *Id.* She further noted that Dr. Hunter indicated in his December 2011, opinion that Plaintiff's headaches were completely disabling, but that she did not alleged headaches as an impairment when she applied for disability benefits and that there was little documented about headaches or treatment for headaches in Dr. Hunter's records or the records of other providers. *Id.*

The undersigned recommends a finding that the ALJ properly considered Dr. Hunter's opinions in accordance with 20 C.F.R. § 404.1527(c) and SSR 96-2p and the relevant case law. The ALJ explained that she accorded Dr. Hunter's opinion little weight and provided an explanation to support the weight she accorded it. *See* Tr. at 28. While Dr. Hunter was Plaintiff's treating physician, the ALJ explained that his opinion was not entitled to controlling weight because it was not well-supported and was inconsistent with other evidence in the case record. *Id.* The ALJ considered the factors set forth in 20 C.F.R. § 404.1527(c). She addressed the examining relationship, the treatment

18

relationship, the nature and extent of the treatment relationship, and the supportability of Dr. Hunter's opinion when she discussed Plaintiff's complaints and Dr. Hunter's observations during visits. *See* Tr. at 26–27. The ALJ outlined Dr. Hunter's relatively benign objective findings (normal ambulation and muscle strength and tone), his recommendations for infrequent follow up, and his indication that Plaintiff was not in distress. *See* Tr. at 26. She also addressed consistency with the record as a whole when she pointed to objective tests and observations that conflicted with the degree of limitation set forth in Dr. Hunter's opinions. She noted that imaging records of Plaintiff's left hip showed good alignment and no evidence of complications and that imaging records of her lumbar spine indicated lumbar spondylosis without acute findings. Tr. at 26. The ALJ also discussed Dr. Roman's examination in which Plaintiff demonstrated full range of motion in her cervical spine, bilateral shoulders, elbows, wrists, and ankles; normal hip adduction and abduction; normal seated straight-leg raise; normal and symmetrical muscle strength in her upper extremities; reduced range of motion of her lumbar spine; and 4+/5 strength in her lower extremities, with no muscle atrophy. *Id.* While the ALJ did not address Dr. Hunter's specialization, the record suggests that he was Plaintiff's primary care physician and not a specialist, which renders this consideration unnecessary.

The undersigned rejects Plaintiff's argument that the ALJ gave little weight to Dr. Hunter's opinion because his records were illegible. The ALJ did not indicate in her decision any problems with the legibility of the records, and the undersigned was able to read Dr. Hunter's records.

The undersigned also rejects Plaintiff's argument that the ALJ failed to specify the objective evidence or clinical findings that were inconsistent with Dr. Hunter's opinions. While the ALJ did not specifically discuss the imaging reports and Dr. Roman's observations when explaining that she was according little weight to Dr. Hunter's opinion, she did discuss them elsewhere in the decision and a comparison of those records and Dr. Hunter's opinion reveals obvious inconsistencies. Dr. Hunter indicated that Plaintiff would only be able to use her arms and hands on a minimal basis, but the ALJ noted that Dr. Roman's examination revealed normal range of motion and strength in Plaintiff's cervical spine and upper extremities. *See* Tr. at 26. Dr. Hunter indicated that Plaintiff's abilities to sit, stand, and lift were significantly limited, but the ALJ noted that Dr. Roman observed negative seated straight-leg raise, normal hip abduction and adduction, and ability to get on and off the exam table. *Id.*

Finally, the undersigned rejects Plaintiff's argument that "[t]he only specific evidence relied on by the ALJ that was inconsistent with the opinions from Dr. Hunter were the reports completed by non-examining state agency medical consultants." [ECF No. 8 at 15]. While Dr. Hunter's opinions were inconsistent with those of the state agency consultants, they were also inconsistent with the objective evidence, the observations from the consultative examination, the imaging reports, and his own treatment notes. Therefore, the undersigned recommends a finding that the ALJ's decision to accord them little weight was supported by substantial evidence.

b.     Dr. Stuckey's Opinion

The record contains an impairments questionnaire signed by Dr. Stuckey on December 16, 2011, which indicates that Plaintiff is limited as follows: sit for one hour during an eight-hour day; stand/walk for less than one hour during an eight-hour day; unable to sit continuously in a work setting; must move around after sitting for one hour; unable to stand/walk continuously in a work setting; occasionally lift zero to five pounds; no carrying; moderate grasping, turning, and twisting objects; moderate use of fingers/hands for fine manipulation; moderate use of arms for reaching; inability to keep neck in a constant position; experience of pain, fatigue, or other symptoms constantly severe enough to interfere with attention and concentration; incapable of even low stress; needs to take unscheduled breaks several times per day for 30 to 45 minutes each time; expected to be absent from work about two to three times a month; psychological limitations; needs to avoid noise; needs to avoid fumes; needs to avoid gases; needs to avoid temperature extremes; needs to avoid heights; no pushing; no pulling; no kneeling; no bending; and no stooping. Tr. at 495–502.

The ALJ gave little weight to Dr. Stuckey's opinion, noting that he indicated in his records in October 2008, September 2010, and May 2011, that Plaintiff "got along quite well despite having pain symptoms and having undergone bilateral hip replacement." Tr. at 28. The ALJ also noted that Dr. Stuckey indicated that Plaintiff conveyed to him that she was experiencing stress due to taking care of her elderly mother, who lived a distance away. *Id.*

The undersigned recommends a finding that the ALJ properly considered Dr. Stuckey's opinion in accordance with 20 C.F.R. § 404.1527(c) and SSR 96-2p and the relevant case law. The ALJ explained that she accorded Dr. Stuckey's opinion little weight and provided an explanation to support the weight she accorded it. *See* Tr. at 28. While Dr. Stuckey was one of Plaintiff's treating physicians, the ALJ did not accord his opinion controlling weight because it was not well-supported and was inconsistent with other evidence in the case record. *Id.* The ALJ considered the factors set forth in 20 C.F.R. § 404.1527(c). She addressed the examining relationship, the treatment relationship, the nature and extent of the treatment relationship, and the supportability of Dr. Stuckey's opinion when she discussed Plaintiff's complaints and Dr. Stuckey's observations during visits. *See* Tr. at 27. She noted Plaintiff's indication to Dr. Stuckey that she experienced joint pain in the morning, but that her pain decreased as the day went on, as well as Dr. Stuckey's benign findings. *Id.* As with Dr. Hunter's opinion, the ALJ addressed consistency with the record as a whole when she pointed to objective tests and observations that conflicted with the degree of limitation set forth in Dr. Stuckey's opinion, including the imaging reports and the objective findings from Plaintiff's consultative examination with Dr. Roman. *See* Tr. at 26. While the ALJ did not address Dr. Stuckey's specialization, the record suggests that he was one of Plaintiff's primary care physicians and not a specialist, which renders this consideration unnecessary. For the foregoing reasons, the undersigned recommends a finding that the ALJ's decision to accord little weight to Dr. Stuckey's opinion was supported by substantial evidence.

2.      Credibility

Plaintiff argues the ALJ failed to properly evaluate her credibility in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p. [ECF No. 8 at 18]. Plaintiff also argues that the ALJ relied solely on objective evidence to discount her subjective statements. [ECF No. 8 at 19–20].

The Commissioner argues that substantial evidence supported the ALJ's credibility determination. [ECF No. 11 at 11].

SSR 96-7p provides the following guidance to ALJs tasked with assessing the credibility of claimants' statements:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

The provisions of 20 C.F.R. § 404.1529(c) set forth the following factors that the ALJ must consider in addition to the objective evidence when assessing a claimant's credibility:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate or aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

The ALJ provided the following explanation for her conclusion regarding Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. at 25.

The undersigned recommends a finding that the ALJ properly considered the factors set forth in 20 C.F.R. § 404.1529(c). The ALJ specified that she considered Plaintiff's daily activities when she indicated that she reported that she "could care for her dog, could attend to her personal hygiene, prepared simple meals, performed light

24

household chores, shopped occasionally, drove occasionally, read, watched television, participated in bird watching, watered her inside and outside plants, and attended community events" and when she acknowledged that "claimant testified that she tried to do light housekeeping, occasionally shopped, occasionally drove the car for short distances, and attended church weekly." Tr. at 23, 25. The ALJ explicitly considered the location, duration, frequency, and intensity of Plaintiff's pain and noted that "claimant maintained that she was unable to work because of bilateral hip replacements, a ruptured disc in her back, numbness and pain in her legs, and back pain;" that "she experienced headaches a couple of times weekly that could last for up to three days;" and that she "indicated that she experienced pain and stiffness in her hips." *Id.* She noted factors that precipitated or aggravated Plaintiff's symptoms, indicating that "[s]he stated that she could not sit for extended periods without changing positions to relieve her pain symptoms," and that she testified that she had "difficulty maintaining her balance or climbing stairs." *Id.* The ALJ noted that Plaintiff had been prescribed Vicodin "for her more severe pain symptoms." Tr. at 27. While the ALJ did not address the effectiveness or the side effects of Plaintiff's medications, the undersigned's review of Plaintiff's testimony and the medical evidence indicates that Plaintiff did not complain about the effectiveness of her medication and indicated in her testimony that she had no side effects from medications. *See* Tr. at 49. The ALJ acknowledged that Plaintiff had undergone bilateral hip replacement. Tr. at 26. Finally, the ALJ considered measures Plaintiff used to relieve symptoms, indicating that she testified that she needed to change positions often and that she "could stand for up to 15 minutes, could walk on even surfaces for up

to 15 minutes, and could sit for up to 25 minutes before moving around for up to 15 minutes." Tr. at 25.

The ALJ relied upon the entire record to support her credibility determination. She considered and summarized Plaintiff's hearing testimony and the disability reports in the record. Tr. at 23, 25. She also discussed the evidence in the record that undermined Plaintiff's subjective complaints, including indications from Plaintiff's doctors that she was getting along well, references to her taking care of her elderly mother after her alleged onset date of disability, imaging records indicating no complications in her left hip, imaging records of her lumbar spine that revealed no acute findings, evidence from Plaintiff's consultative examination with Dr. Roman, treatment notes from Drs. Hunter and Stuckey, and the medical opinions from the state agency physicians. Tr. at 25–29. Therefore, the undersigned recommends a finding that the ALJ provided a well-reasoned credibility determination, as required by SSR 96-7p.

###### 3.    New and Material Evidence

Dr. Rogers's report and opinion were not included in the administrative record, but Plaintiff attached to her brief copies of this evidence. [ECF Nos. 8-1, 8-2]. [3]

---

[3] On September 30, 2014, the undersigned issued an order directing the Commissioner to supplement the record with the independent medical evaluation and the questionnaire completed by Dr. Rogers. [ECF No. 13]. The Commissioner filed objections to the order [ECF No. 15], and Plaintiff filed a Reply [ECF No. 18].  Because the evidence at issue was attached to Plaintiff's brief and thus available for review, the undersigned withdraws that order. The undersigned acknowledges the Commissioner's argument that 20 C.F.R. § 404.976(b) allows the Appeals Council to return to the claimant evidence that it determines does not relate to the period on or before the date of the ALJ's hearing decision, but cautions that 42 U.S.C. § 405(g) requires the Commissioner to include in the certified copy of the transcript the evidence upon which the findings and decision

On May 24, 2013, Plaintiff underwent an independent medical evaluation by David S. Rogers, M.D. [ECF No. 8-1]. Dr. Rogers indicated that he reviewed records from Drs. Stuckey and Hunter and from Waccamaw Community Hospital. [ECF No. 8-1 at 1]. Dr. Rogers assessed chronic common migraine; class I hypertension; lower extremity neuropathy; scoliosis and degenerative disc disease of the lumbar spine; left trochanteric bursitis; depression with features of anxiety, insomnia, and probable bipolar affective disorder; and left upper extremity/left shoulder pathology of indeterminate etiology. [ECF No. 8-1 at 4–5]. He indicated that Plaintiff was not capable of performing any type of gainful activity and that she would be unlikely to be able to do so within the next year. [Entry No. 8-2 at 6].

On June 10, 2013, Dr. Rogers completed a multiple impairment questionnaire in which he indicated that Plaintiff could sit for three hours during an eight-hour day; stand/walk for one hour during an eight-hour day; must get up and move around every 20 minutes; could occasionally lift and carry 0 to 10 pounds; and could never lift over 10 pounds. [ECF No. 8-2 at 3–4]. He indicated that Plaintiff would have minimal limitation in using her bilateral upper extremities for grasping, turning, and twisting objects; minimal limitation in using her fingers/hands for fine manipulations; and moderate

---

complained of are based, and that the United States Supreme Court acknowledged that remand may be appropriate where an appellate court is unable to exercise informed judicial review because of an inadequate administrative record in *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594 (1980). Where, as here, a plaintiff alleges error on the part of the Appeals Council in failing to remand a claim based on new and material evidence, a transcript that lacks the evidence at issue does not provide all evidence necessary for informed judicial review. Had Plaintiff not attached this evidence to her brief, it would have been necessary for the transcript to be supplemented.

limitation in using her bilateral arms for reaching. [ECF No. 8-2 at 4–5]. Dr. Rogers specified that Plaintiff's symptoms would likely increase if she were placed in a competitive work environment; that her condition interfered with her ability to keep her neck in a constant position; that her experience of pain was constantly severe enough to interfere with attention and concentration; and that she was incapable of even "low stress" jobs. [ECF No. 8-2 at 5–6]. He opined that Plaintiff would require a five to ten minute break every 30 to 45 minutes and that she would be absent from work more than three times a month. [ECF No. 8-2 at 6–7]. Finally, he indicated that the limitations set forth in the questionnaire applied as early as June 2008. [ECF No. 8-2 at 7].

Plaintiff argues that the claim should be remanded based upon new and material evidence and that the Appeals Council erroneously concluded that the evidence did not pertain to the period at issue. [ECF No. 8 at 21–22].

The Commissioner argues that the evidence submitted to the Appeals Council does not compel a different result. [ECF No. 11 at 13]. The Commissioner contends that, because the Dr. Rogers did not examine Plaintiff until nearly six months after the ALJ's decision and because he relied on the assessments of Drs. Hunter and Stuckey that the ALJ discounted, the Appeals Council was not required to accept Dr. Rogers's assessment as new and material evidence. [ECF No. 11 at 14–15].

The regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or

before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, *citing Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). If the new and material evidence relates to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 970(b).

The Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340–41 (4th Cir. 2012), suggests that evidence created after the ALJ's decision may be considered as new and material evidence and given retrospective consideration under certain circumstances. While *Bird* specifically addressed evidence created after a claimant's date last insured, this court has suggested its holding extends to situations in which evidence arises after the date of an ALJ's decision, but before the Appeals Council makes a decision to grant or deny review. *See Dickerson v. Colvin*, No. 5:12-33-DCN, 2013 WL 4434381, at *14 (D.S.C. Aug. 14, 2013) (holding that a medical opinion dated more than a year after the ALJ's decision was new and material evidence that warranted remand); *see also Evans v. Colvin*, No. 8:13-1325-DCN, 2014 WL 4955173, at *28 (D.S.C. Sept. 29, 2014) (holding that new evidence did not require reconsideration of the ALJ's decision because the new evidence did not appear to have any bearing upon whether the plaintiff was disabled during the time period relevant to the ALJ's decision).

In its notice denying Plaintiff's request for review of the ALJ's decision, the Appeals Council indicated the following regarding Dr. Rogers's report and opinion:

> We also looked at the Independent Medical Evaluation by Oaktree Medical
> Center dated May 24, 2013 (6 pages); and the Multiple Impairment
> Questionnaire from Dr. David S. Rogers dated June 19, 2013 (8 pages). The
> Administrative Law Judge decided your case through November 21, 2012.
> This new information is about a later time. Therefore, it does not affect the
> decision about whether you were disabled beginning on or before
> November 21, 2012.

Tr. at 2.

The undersigned recommends a finding that the evidence from Dr. Rogers was not new and material evidence that warrants remand. The undersigned has considered Plaintiff's argument that the evidence pertains to the period prior to the ALJ's decision. Because Dr. Rogers indicated in his opinion that the identified limitations applied as early as June 2008, and because he reviewed the records of physicians who treated Plaintiff during the period at issue, there is sufficient evidence to indicate that his evaluation report and opinion related, at least in part, to the period on or before the date of the ALJ's decision. However, the undersigned rejects Plaintiff's argument that Dr. Rogers's evaluation report and opinion were material because Dr. Rogers based his conclusion that the limitations applied as early as June 2008 on evidence that the ALJ considered and accorded little weight and because Dr. Rogers's assessment yielded more significant findings than those documented in the record prior to the ALJ's decision, which suggests a worsening in Plaintiff's impairments in the time between the ALJ's decision and Dr. Rogers's assessment. Dr. Rogers conducted and offered his opinion based on a one-time evaluation on May 24, 2013, which was more than six months after the date of the ALJ's decision. [ECF No. 8-1]. He based his opinion that the limitations applied as early as June 2008 on Plaintiff's subjective complaints and self-reported limitations, reports from Drs.

Hunter and Stuckey, pelvic and abdominal CT scan reports dated July 2012, and his examination. *See* [ECF No. 8-1]. He administered Beck's Depression Inventory, which produced significant findings. [ECF No. 8-1 at 3]. This was in contrast with evidence in the record that indicated that Plaintiff had no work-related limitation in function due to a mental condition. Tr. at 381. Dr. Rogers noted decreased range of motion in Plaintiff's neck, positive impingement sign at her left shoulder, significant tenderness to palpation of the proximal metacarpal of the left thumb, marked tenderness to direct palpation of the left trochanter, decreased lumbar flexion and extension, decreased grip strength on the left, decreased thermal perception in the mid-calf bilaterally, and mildly ataxic and antalgic gait. [ECF No. 8-1 at 4]. Most of these findings were in direct contrast to Dr. Roman's March 2011 assessment. *See* Tr. at 424–29. Dr. Rogers noted many more abnormalities than were noted by the treating physicians, as well. *See* Tr. at 440, 442, 444, 447, 448, 449, 504, 505. Based on the differences between Dr. Rogers's findings and the findings of Drs. Hunter, Stuckey and Roman, it appears that Plaintiff's level of functioning in May 2013 was significantly decreased from her level of functioning from June 2008 through the date of the ALJ's decision. Therefore, while Dr. Rogers purports to provide an evaluation of Plaintiff's limitations as early as June 2008, the undersigned's review of the record indicates that his findings are inconsistent with the evidence during the relevant time period. Therefore, there was not a reasonable possibility that Dr. Rogers's report would have changed the outcome in this case.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

October 16, 2014                                     Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).